```
UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
 --------------------------------X
 PHILIP COFFARO,

         Plaintiff,                         MEMORANDUM AND ORDER

    -against-                               Civil Action No.
                                            08-CV-2025(DGT)
 DAVID CRESPO and SOTHEBY'S,

         Defendants.

 --------------------------------X
Trager, J.:
```

Philip Coffaro ("plaintiff") commenced this action against David Crespo ("defendant") and Sotheby's, seeking a declaratory judgment that he is the rightful owner of a work of art by Salvador Dali and alleging conversion and slander of title. Plaintiff now moves for partial summary judgment pursuant to Rule 56 of the Federal Rules of Civil Procedure on his claim for a declaratory judgment. For the reasons stated below, plaintiff's motion is granted.

**Background**

**(1)**

Construing the record in the light most favorable to defendant, the facts are as follows. Plaintiff has operated an art gallery in Mineola, New York for more than twenty years. Pl.'s Aff. Supp. Mot. Summ. J. ("Pl.'s Aff.") ¶ 3; Pl.'s Compl.

1

¶ 6. Over the years, plaintiff occasionally conducted business with defendant, an art dealer and member of a Connecticut art gallery. Id. at ¶ 4; Def.'s Aff. Supp. Mot. Dismiss Improper Venue ("Def.'s Venue Aff.") ¶ 2.

On February 11, 1990, plaintiff purchased "Folle Folle Folle Minerva," a mixed media work created by Dali ("the Painting"), from Julien Aime[1] for $88,000.[2] See Def.'s Aff. Opp'n Mot. Summ. J. ("Def.'s Aff.") ¶ 9. Upon the purchase, Aime provided plaintiff with a handwritten bill of sale, which described the Painting and stated that plaintiff had paid in full. Aime Aff. ¶ 4; Pl.'s Ex. A. According to defendant, plaintiff bought the Painting to give to defendant in order to satisfy a debt that he owed defendant from a previous transaction. Def.'s Aff. ¶ 8. Defendant claims that after purchasing the Painting, plaintiff directed Aime to transfer all rights, title and ownership of it to defendant. Id. at ¶ 10. On February 15, 1990, Aime delivered the Painting to defendant

---

[1] Aime is also known as as "Julien Heiserman" or "Julien Von Heiserman." Aime Aff. ¶ 1-9. Although it is unclear from the record, it seems that Aime is also an art dealer or collector. Aime originally purchased the Painting on November 15, 1989 at an auction held by Christie's. Def.'s Aff. ¶ 7; Aime Aff. ¶ 3.

[2] The parties dispute the amount that plaintiff paid Aime for the painting in 1990. Plaintiff claims that he paid $53,000 whereas defendant claims that the amount was $88,000. However, this disputed fact is irrelevant to the instant litigation because plaintiff is seeking a declaration that he owns the Painting and not damages.

along with a bill of sale, which stated that Aime had "received compensation due for the sale of this piece to Mr. Crespo and do give all rights of ownership to Mr. Crespo . . . ." Def.'s Ex. B; Def.'s Aff. ¶ 11.

On July 15, 1991, defendant agreed to transfer the Painting back to Aime on the condition that Aime sell the artwork within six months. Def.'s Aff. ¶ 12; Def.'s Ex. C. Under their agreement, Aime would return the Painting to defendant if he failed to sell it within the allotted time. Id. at ¶ 13; Def.'s Ex. C. As payment for the Painting, Aime gave defendant two Diego Giacometti lamps and promised to pay an additional $62,500 if and when the Painting was sold. Id. at ¶ 14; Def.'s Ex. C. However, Aime failed to sell the Painting within six months and refused to return it or to pay defendant the remaining debt. Id. at ¶ 15-16. Defendant had no further contact with Aime and believed that he moved the Painting to South Africa. Id. at ¶ 18.

In 1994, defendant filed for bankruptcy in the District of Connecticut. Id. at ¶ 25; Pl.'s Ex. B. Defendant did not list the Painting as an asset on his bankruptcy schedules nor did he list any claims against Aime or any other parties for conversion or theft. Def.'s Aff. ¶ 27-29. According to defendant, he omitted this information because he lacked the financial means

to pursue a legal action and believed that he had lost his opportunity to recover the Painting. Id. at ¶ 30.

Defendant states that in 2006, when plaintiff asked him if he knew of any interesting artwork for an upcoming television auction, he informed plaintiff that Aime was in possession of the Painting but that it belonged to him. Id. at ¶ 19. To prove his ownership, defendant claims that he sent plaintiff the relevant papers documenting his title.[3] Id. at ¶ 20. At some point thereafter, plaintiff purchased the Painting from Aime and displayed it in his gallery. Id. at ¶ 21. Defendant claims that when he saw the Painting in plaintiff's gallery, he again informed plaintiff that he was the rightful owner. Id. at ¶ 20.

In November 2007, plaintiff consigned the Painting to Sotheby's for auction, where it was sold for £130,000. Id. at ¶ 23; Pl.'s Aff. ¶ 24. However, before Sotheby's could deliver the sale proceeds to plaintiff, defendant wrote to Sotheby's and asserted a claim of ownership over the Painting. Pl.'s Aff. ¶ 25. As a result, Sotheby's is currently holding the proceeds from the sale of the Painting, pending a judicial determination of ownership.[4] Id. at ¶ 26.

---

[3] Defendant does not specify what documents he sent to plaintiff.

[4] Although Sotheby's is a named defendant, plaintiff has not asserted any claims against it. On June 6, 2008, plaintiff and Sotheby's stipulated that Sotheby's would not formally appear in

4

Plaintiff's account of the events surrounding the Painting is quite different from defendant's version. Plaintiff states that after he purchased the Painting from Aime in 1991, defendant borrowed it, claiming that he had an interested buyer. Pl.'s Aff. ¶ 7. According to plaintiff, defendant failed to sell the Painting, and when plaintiff asked him to return it, he informed plaintiff that he lent it to Aime. Id. at ¶ 8-9. Plaintiff claims that he did not pursue any action against defendant at that time because he knew that defendant was in financial straits. Id. at ¶11.

According to plaintiff, he reacquired the Painting in approximately 2005 when he ran into Aime at an art auction and informed Aime that he was the rightful owner. Plaintiff claims that Aime then agreed to return the Painting for $40,000.[5] Id. at ¶ 14. Plaintiff further states that defendant visited the gallery on several occasions but never asserted a claim to the Painting. Id. at ¶ 16.

On May 20, 2008, after defendant objected to the sale of the Painting at Sotheby's, plaintiff filed the present action against defendant, primarily to obtain a declaratory judgment

---

this action to avoid legal expenses and that it would hold the proceeds from the auction in escrow.

[5] As evidence of this purchase, plaintiff has submitted a copy of the signed agreement between him and Aime. Pl.'s Ex. C. Additionally, Aime stated in his affidavit that he reconveyed the Painting to plaintiff in 2005. Aime Aff. ¶ 8.

5

that he is the true owner of the painting.  Plaintiff also claims: (1) conversion, stemming from defendant's alleged transfer of the Painting to Aime in July 1991; and (2) slander of title, regarding defendant's claim to Sotheby's that he is the true owner of the painting.  On May 28, 2009, this Court denied defendant's motion to dismiss for improper venue. Coffaro v. Crespo, No. 08-CV-2025, 2009 WL 1505681 (E.D.N.Y. May 28, 2009).  Plaintiff filed the instant motion for partial summary judgment on his declaratory judgment claim on February 12, 2010.

**Discussion**

**(1)**

**Rightful Ownership**

Plaintiff argues that the evidence irrefutably demonstrates that he is entitled to a declaration of ownership of the Painting.  However, plaintiff is not entitled to summary judgment based solely on the evidence presented because there remain genuine issues of disputed fact, in particular regarding the history and ownership of the Painting.  Notably, both parties have submitted bills of sale that demonstrate their legal title.  See Pl.'s Ex. A; Def.'s Exs. B and C.  Plaintiff has submitted a bill of sale, dated February 11, 1990,

transferring ownership from Aime to plaintiff, and a signed contract from approximately 2005 that reconveyed the Painting from Aime to plaintiff. See Pl.'s Exs. A, C. Defendant has also provided a bill of sale dated February 15, 1990, transferring ownership from Aime to defendant. See Def.'s Ex. B. It is true that plaintiff previously submitted these documents while defendant's motion to dismiss for improper venue was pending, whereas defendant only produced his bill of sale in response to plaintiff's motion for summary judgment, despite the fact that it certainly had relevance and might well have been helpful to his venue motion. Nevertheless, as is evident from the facts described above as well as the parties' conflicting affidavits, plaintiff and defendant present two very different accounts of the events surrounding the Painting's ownership. See Kelly v. Evolution Mkts., Inc., 626 F. Supp. 2d 364, 370 (S.D.N.Y. 2009) (holding that conflicting affidavits raise a genuine issue of material fact and therefore preclude summary judgment); Volga-Inconsult-Invest v. United Mgmt. Corp., 93-cv-4229, 1997 WL 139005, at *3 (E.D.N.Y. Mar. 4, 1997) (same). Therefore, because plaintiff has failed to show that there are no genuine issues of material fact, summary judgment is not warranted based merely on the evidence presented.

**(2)**

**Judicial Estoppel**

Although plaintiff has not demonstrated that he is the rightful owner, it is clear as a matter of law that defendant has no claim to the Painting under the doctrine of judicial estoppel. Specifically, because defendant did not list the Painting as one of his assets or make any claims for conversion or theft regarding the Painting in his bankruptcy proceedings, he is judicially estopped from asserting ownership in the current proceeding.

"The doctrine of judicial estoppel prevents a party from asserting a factual position in one legal proceeding that is contrary to a position that it successfully advanced in another proceeding." Rodal v. Anesthesia Group of Onondaga, P.C., 369 F.3d 113, 118 (2d Cir. 2004). "A party invoking judicial estoppel must show that (1) the party against whom the estoppel is asserted took an inconsistent position in a prior proceeding and (2) that position was adopted by the first tribunal in some manner, such as by rendering a favorable judgment." Mitchell v. Washingtonville Cent. Sch. Dist., 190 F.3d 1, 6 (2d Cir. 1999) (internal citations omitted). Because it is an equitable doctrine, judicial estoppel can be invoked by a court at its discretion. New Hampshire v. Maine, 532 U.S. 742, 750 (2001).

However, judicial estoppel only applies "to situations where the risk of inconsistent results with its impact on judicial integrity is certain." Simon v. Safelite Glass Corp., 128 F.3d 68, 72 (2d Cir. 1997). Additionally, estoppel does not apply when a litigant's prior representations were the result of a good faith mistake or inadvertent error. Id.

In the bankruptcy context, judicial estoppel is commonly invoked in order "to prevent a party who failed to disclose a claim in bankruptcy proceedings from asserting that claim after emerging from bankruptcy." Negron v. Weiss, 06-CV-1288, 2006 WL 2792769, at *3 (E.D.N.Y. Sept. 27, 2006); see also Galin v. IRS, 563 F. Supp. 2d 332, 338-39 (D. Conn. 2008) (noting that "judicial estoppel is particularly appropriate when a party does not disclose an asset to the bankruptcy court and then brings a claim in another court based upon the ownership of that asset").

In this case, defendant's actions require the application of judicial estoppel. Defendant's instant claim is clearly inconsistent with the position he took earlier in his bankruptcy proceeding. Bankruptcy petitioners have an affirmative obligation to disclose all assets to the bankruptcy court, including all causes of action that can be brought by the debtor. See 11 U.S.C. § 541(a)(1); 11 U.S.C. § 521(a)(1). However, when defendant filed a voluntary bankruptcy petition in the Bankruptcy Court in 1994, he specifically declared that he

had no "art objects."[6]  Pl.'s Ex. B.  Defendant also failed to list any claims for the Painting against Aime, plaintiff or a third party, despite the fact that he included a claim against another party for stolen lamps in an unrelated case.  See id. The Bankruptcy Court accepted defendant's claims and entered an order discharging him of his debts, upon the belief that he had no ownership interest in the Painting.  See Galin v. IRS, 563 F. Supp. 2d at 339 ("A bankruptcy court is considered to have adopted a party's assertion in a bankruptcy proceeding when it confirms a plan in which creditors release claims against the debtor.").  Thus, judicial estoppel bars defendant from now asserting a claim to the Painting.

Defendant argues that his failure to disclose the Painting as an asset or list a claim to it during his bankruptcy proceedings was a good faith mistake, thus precluding the application of judicial estoppel.  Specifically, he claims that judicial estoppel should not apply in the instant litigation because at the time of his bankruptcy proceedings, he believed the Painting was unrecoverable and therefore mistakenly omitted a claim to it in his bankruptcy schedules.

---

[6] In his personal property schedule, defendant listed his cash on hand, bank accounts, household goods and furnishings, clothing, jewelry, accounts receivable, a claim against Safeco, Ins. for stolen lamps, his car and a timeshare in Antigua.  He also noted that he had no "Books; pictures and other art objects; antiques; stamp, coin, record, tape, compact disc, and other collections or collectibles."  Pl.'s Ex. B.

Although the Second Circuit has acknowledged that in general, a good faith mistake may preclude the application of judicial estoppel, it has not directly addressed a case involving a good faith failure to disclose assets in an earlier bankruptcy proceeding. Galin v. IRS, 563 F. Supp. 2d at 340 (explaining that "[t]he Second Circuit has not yet decided whether . . . judicial estoppel is appropriate in a case involving a good faith failure to disclose assets in a bankruptcy proceeding"). Several other circuit courts, however, have expressed hesitancy at allowing a debtor to recover in a later litigation when he or she initially failed to fully disclose pending claims during bankruptcy. Id. These courts have concluded that "failure to disclose assets will only be deemed inadvertent or due to mistake when either the debtor has no knowledge of the claims or no motive to conceal the claims." Id.; see also Eastman v. Union Pac. R.R. Co., 493 F.3d 1151, 1157 (10th Cir. 2007) ("[O]ur sister circuits . . . . have not been overly receptive to debtors' attempts to recover on claims about which they inadvertently or mistakenly forgot to inform the bankruptcy court.") (internal quotation marks omitted); accord Barger v. City of Cartersville, 348 F.3d 1289, 1294 (11th Cir. 2003); Browning v. Levy, 283 F.3d 761, 776 (6th Cir. 2002); In re Coastal Plains, Inc., 179 F.3d 197, 210 (5th Cir. 1999). Some courts have gone so far as to infer deliberate manipulation

11

where a debtor had both knowledge of the claims and a motive to conceal them in the original litigation. See, e.g., Burnes v. Pemco Aeroplex, Inc., 291 F.3d 1282, 1287 (11th Cir. 2002) ("[S]everal circuits, in considering the particular issue of judicial estoppel and the omission of assets in a bankruptcy case, have concluded that deliberate or intentional manipulation can be inferred from the record.").

These cases provide worthy guidance regarding the application of judicial estoppel to the instant case. Here, defendant's knowledge of his interest in the Painting during his bankruptcy proceedings precludes him from asserting a good faith mistake defense to judicial estoppel. Defendant did not fail to assert a claim because he thought he did not have one; rather, he simply chose not to list his claim because he believed that recovery was unlikely and too expensive. Def.'s Aff. ¶ 30. Thus, even accepting defendant's explanation, his omission was not a mistake but instead a conscious and active decision, far from inadvertent. This seems especially true given that defendant included a claim against another party for stolen lamps in an unrelated case, and as plaintiff points out, even "remembered to list his interest in a time share with the nominal value of $1, and a small account receivable of $8,400." Pl.'s Reply Mem. Law Further Supp. Mot. Summ. J. at 7. Moreover, defendant was represented by counsel in his bankruptcy

proceedings, who likely informed him that he was required to list any possible claims on his schedules, upon penalty of perjury.

Defendant's belief that the Painting was unrecoverable is simply not a sufficient excuse or explanation as to why he did not include a claim for it on his schedules. Even if defendant believed the Painting to be unrecoverable, he nonetheless had a legal obligation to list it as one of his assets or alternatively, to list a claim for damages against Aime. See 11 U.S.C. § 521(a)(1). Indeed, most debtors lack the funds to pursue outstanding assets but still must list the information in their schedules. See id.

Moreover, defendant certainly had a motive to conceal his alleged interest in the Painting — that is, in order to avoid the inclusion of the Painting in the bankruptcy court's overall division and allocation of assets to creditors. Although deliberate manipulation cannot be inferred from the record, it is at least clear that defendant omitted a claim to the Painting in his Bankruptcy proceedings even though he believed it belonged to him. This knowledge of a possible claim, no matter how implausible defendant then believed the Painting's recovery to be, judicially estops defendant from now asserting ownership over the Painting.

Defendant also argues that judicial estoppel does not apply because plaintiff was not a party to the bankruptcy proceeding and therefore did not detrimentally rely on defendant's previous position. However, "there is little support in the caselaw for the proposition that reliance is a required element [for judicial estoppel] in the Second Circuit." A.I. Trade Fin., Inc. v. Centro Internationale Handelsbank AG, 926 F. Supp. 378, 389 (S.D.N.Y. 1996).

Additionally, applying judicial estoppel to the instant case facilitates the goal of the doctrine, which is to protect the integrity of the judicial system. See Galin v. IRS, 563 F. Supp. 2d at 340. Defendant is abusing the bankruptcy process by attempting to reclaim an asset that he consciously omitted in his bankruptcy proceedings years ago. Because judicial estoppel specifically exists to prevent such abuse, it is therefore appropriate here, regardless of plaintiff's role (or lack thereof) in defendant's bankruptcy proceedings. Id.; see also New Hampshire, 532 U.S. at 743 ("The purpose of the doctrine is to protect the integrity of the judicial process by prohibiting parties from deliberately changing positions according to the exigencies of the moment."). Accordingly, judicial estoppel precludes defendant from asserting a claim to the Painting, and plaintiff therefore has superior title to it as against defendant.

14

**(3)**

**Standing**

In the alternative, independently compelling the same result, defendant lacks standing to bring a claim that he owns the Painting.[7]  When, as here, a debtor fails to list a claim in his bankruptcy schedules, that claim remains the property of the bankruptcy estate even after discharge, and the debtor lacks standing to pursue it.  See 11 U.S.C. § 521(1), § 541; see also Galin v. US, 2008 WL 5378387, at *5-6 (holding that because debtor failed to list a claim as an asset on her bankruptcy petition, she did not have standing to later pursue the claim); Pealo v. AAF McQuay, Inc., 140 F. Supp. 2d 233, 237 (N.D.N.Y. 2001) ("[M]any courts have held that a debtor . . . lacks the legal capacity to pursue claims that were not disclosed to the bankruptcy estate."); Kagan v. Swider, 99-CV-1503, 2000 WL 158329, at *2 (E.D. La. Feb. 10, 2000) (holding that plaintiff did not have standing to sue on an employment contract because she did not previously list the contract as an asset on her bankruptcy petition); Rosenshein v. Kleban, 918 F. Supp. 98, 103 (S.D.N.Y. 1996) ("Courts have held that because an unscheduled

---

[7] The issue of standing is closely intertwined with the above discussion of judicial estoppel.  Indeed, many cases address standing and judicial estoppel together, as one issue.  See, e.g., Pealo v. AAF McQuay, Inc., 140 F. Supp. 2d 233, 237 (N.D.N.Y. 2001).  However, they are certainly distinct concepts.  As such, this opinion addresses them separately, despite the fact that they yield the same result.

claim remains the property of the bankruptcy estate, the debtor lacks standing to pursue the claims after emerging from bankruptcy, and the claims must be dismissed.") Thus, having failed to list an interest in the Painting on his bankruptcy schedules, defendant does not have standing to assert an interest in the Painting.

## Conclusion

For the reasons stated above, plaintiff's motion for summary judgment on his claim for a declaratory judgment is granted.

Dated: Brooklyn, New York
       June 24, 2010

                                   SO ORDERED:


                                   _____/s/_____
                                   David G. Trager
                                   United States District Judge